## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRIAN MINICK     )
  Plaintiff,    )
        )
 v.       )  Case No. 2:21-CV-2293
        )
CITY OF OVERLAND PARK, KANSAS )
OVERLAND PARK FIRE DEPARTMENT)
8500 Santa Fe Drive    )
Overland Park, Kansas 66212   )
  Defendant.    )

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY
## TRIAL AND DESIGNATION OF PLACE OF TRIAL

COMES NOW, Plaintiff Brian Minick ("Plaintiff" or "Minick"), by and through the undersigned counsel, and files his Complaint and Demand for Jury Trial and Designation of Place of Trial against Defendant City of Overland Park, Kansas ("OPFD" or "Defendant").

## PARTIES

1. Plaintiff is an individual and resident of the State of Kansas residing at 15507 Bradfort Court, Basehor, Kansas 66007.

2. The City of Overland Park, Kansas is a Kansas municipality organized and existing in Johnson County, Kansas.

3. Defendant City of Overland Park, Kansas is an "employer" within the meaning of Title VII, K.S.A. Section 44-1001, et seq.

4. Defendant is an "employer" for purposes of the ADA and as defined in 42 U.S.C. § 12111(5)(A) because it employs more than 15 people each day.

5. During calendar years 2014-2019, for each working day during each of 20 or more calendar weeks, Defendant employed 50 or more employees.

6.      Defendant had at least 15 employees at all relevant times.

7.      This is an action for discrimination and retaliation in violation of Title VII of the Civil Rights Act, Americans with Disabilities Act ("ADA" or "ADAAA"), violation of the Family Medical Leave Act ("FMLA"), Age Discrimination in Employment Act of 1967 ("ADEA"), violation of the Kansas Age Discrimination in Employment Act ("KADEA"), and violation of civil rights pursuant to U.S.C. § 1981.

8.      Plaintiff seeks legal and equitable relief to redress the deprivation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1981 (§ 1981), *et seq*, 42 U.S.C. § 2000e, *et seq*. (Title VII), 42 U.S.C. § 12101, *et seq*, (ADAAA), 29 U.S.C. § 621, *et seq*, (ADEA), 42 U.S.C § 2601, *et seq*, (FMLA) and the Kansas Age Discrimination in Employment Act (KADEA).

## **JURISDICTION**

9.      This Court has jurisdiction over the subject matter and over the parties named herein.

10.      This Court has original jurisdiction in this action pursuant to 28 U.S.C. § 1331 and 1343, 42 U.S.C. §1981, 29 U.S.C. § 621, et seq. and 42 U.S.C. § 2000e-5, in as much as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. C. §2000e et seq., the Americans with Disabilities Act, as amended in 2008 ("ADA"/"ADAAA"), 42 U.S.C. § 12101, et seq., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*., and 42 U.S.C. §1981. This District possesses venue of this matter pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391 (b)(1). The Court may exercise jurisdiction over Plaintiff's state law claims, if any, under 28 U.S.C. § 1367. The jurisdiction of this Court is invoked to secure protection and redress deprivations of

rights guaranteed by federal law which rights provide for injunctive relief and other relief for illegal employment discrimination.

11.     Defendant at all relevant times transacted business in the State of Kansas and committed the acts and omissions alleged herein in the State of Kansas within this District, and otherwise has a continuous and systematic presence in this District.

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise under federal law and involve a substantial federal question.

13.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District Court's territorial jurisdiction.

<u>**ADMINISTRATIVE PROCEEDINGS**</u>

14.     On or about July 15, 2020, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission. The Charge Number is: 563-2020-02502. A copy is attached hereto as **Exhibit "A" and is incorporated herein by reference.**

15.     On or about July 15, 2020, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission. The Charge Number is: 563-2020-02489. A copy is attached hereto as **Exhibit "B" and is incorporated herein by reference.**

16.     On April 2, 2021, the U.S. Department of Justice ("DOJ") issued to Plaintiff a Notice of Right to Sue for Charge Number: 563-2020-02502, regarding Plaintiff's ADA claims. A copy is attached hereto as **Exhibit "C" and is incorporated herein by reference**.

17.     On April 2, 2021, the DOJ issued to Plaintiff a Notice of Right to Sue for Charge Number: 563-2020-02502, regarding Plaintiff's Title VII claims. A copy is attached hereto as **Exhibit "D" and is incorporated herein by reference**.

18.     On April 2, 2021, the DOJ issued to Plaintiff a Notice of Right to Sue for Charge Number: 563-2020-02489, regarding Plaintiff's ADA claims. A copy is attached hereto as **Exhibit "E" and is incorporated herein by reference**.

19.     On April 2, 2021, the DOJ issued to Plaintiff a Notice of Right to Sue for Charge Number: 563-2020-02489, regarding Plaintiff's Title VII claims. A copy is attached hereto as **Exhibit "F" and is incorporated herein by reference**.

20.     On April 2, 2021, the Equal Employment Opportunity Commission ("EEOC") issued to Plaintiff a Notice of Right to Sue for Charge Number: 563-2020-02502, regarding Plaintiff's ADEA claims. A copy is attached hereto as **Exhibit "G" and is incorporated herein by reference**.

21.     On April 2, 2021, the EEOC issued to Plaintiff a Notice of Right to Sue for Charge Number: 563-2020-02489, regarding Plaintiff's ADEA claims. A copy is attached hereto as **Exhibit "H" and is incorporated herein by reference**.

22.     This action has been filed within ninety days after April 2, 2021.

## FACTS COMMON TO ALL COUNTS

23.     Plaintiff was hired by the Merriam Fire Department in or around August 2013.

24.     In July 2014, Plaintiff's wife was diagnosed with cancer.

25.     Plaintiff exercised his rights under the Family Medical Leave Act ("FMLA") and took intermittent FMLA leave to care for his wife and attend her doctor's appointments and treatments.

26.     On or around December 20, 2014, the Overland Park Fire Department took over the Merriam Fire Department.

27.     As a result, Plaintiff was then hired by the Overland Park Fire Department, City of Overland Park ("OPFD") in December 2014.

28.     Following the takeover, Plaintiff completed paperwork to take intermittent FMLA through Defendant beginning in December 2014.

29.     In August 2015, Plaintiff received a positive performance review from Defendant.

30.     In August 2016, Plaintiff received a positive performance review from Defendant.

31.     In August 2016, after more than two years of fighting cancer, Plaintiff's wife passed away.

32.     Following his wife's death, Plaintiff experienced severe depression affecting his ability to eat and sleep, among other things, requiring him to take FMLA leave.

33.     Plaintiff returned to work in October 2016.

34.     Upon his return to OPFD, his performance was heavily scrutinized, more so than his white and younger co-workers.

35.     For example, Plaintiff was given a street location test, requiring him to list and find addresses on a map.

36.     Plaintiff missed one address and was reprimanded.

37.     Other similarly situated co-workers did not face the same discipline.

38.     In or around January 2018, Plaintiff was informed by Lt. Petry that he was doing well and showing improvement.

39.     In or around February 2018, Plaintiff was reprimanded for alleged inability to pump the fire apparatus during a skills evaluation test, despite the fact that Plaintiff had not trained on the pumps since March 2016, and the test was simply supposed to determine the current state of his skills.

40. Later, in June 2018, Jamie Jackson, a white male under 40 years old, similarly failed to follow protocol regarding the CAFS pumps and was not disciplined.

41. In or around April or May 2018, Plaintiff was given a written test which he passed and a practical test which he failed.

42. A few days later, Plaintiff and Lt. Coates redid his practical test and Plaintiff passed with no issues.

43. Lt. Coates told Plaintiff that he probably had test anxiety the prior day.

44. Upon information and belief, Lt. Coates informed Captain Houghton and Lt. Petry that he believed Plaintiff was experiencing anxiety on the day of his practical test.

45. In or around May 2018, Plaintiff was placed on a performance improvement plan (PIP), with respect to his pump operations scores, which was to last for six (6) months.

46. When Plaintiff received the PIP, he complained to Lt. Petry that he did not believe the scores were fair based upon the anxiety and depression he was experiencing.

47. Plaintiff then asked Lt. Petry and Captain Houghton whether he was required to be a driver of the pump apparatus, since he was still experiencing issues related to depression.

48. Even though they were aware that a neurologist had indicated he was experiencing memory loss due to depression, Lt. Petry and Captain Houghton indicated that he was required to drive the pump apparatus.

49. Notably, Plaintiff informed Lt. Petry and Captain Houghton that he could have been accommodated by continually riding backwards on the apparatus or driving the squad pick-up.

50. In or around July 2018, Plaintiff took his three-month test and passed with an exceptional rating, even with faulty testing equipment.

51.     Chief Wernicke and one of Plaintiff's Captains told Plaintiff how proud they were of him and congratulated him on passing the test.

52.     In July 2018, following his three-month test, Plaintiff had his performance evaluation with Lt. Petry and Captain Houghton.

53.     Despite having passed the three-month test and receiving praise for his professionalism, teamwork and forward-thinking in his evaluation, his PIP was extended for an additional three (3) months.

54.     Though Plaintiff was told that his PIP was being extended due to him supposedly not passing several of his evaluations, there were other similarly situated white co-workers, that failed the same evaluations and were not given PIPs.

55.     Though Plaintiff was told that his PIP was being extended due to him supposedly not passing several of his evaluations, there were other similarly situated employees younger than Plaintiff, that failed the same evaluations and were not given PIPs.

56.     Though Plaintiff was told that his PIP was being extended due to him supposedly not passing several of his evaluations, there were other similarly situated co-workers, that had not taken medical leave or requested reasonable accommodations, that failed the same evaluations and were not given PIPs.

57.     Though Plaintiff was told that his PIP was being extended due to him supposedly not passing several of his evaluations, there were other similarly situated co-workers, who did not have a physical or mental impairment, that failed the same evaluations and were not given PIPs.

58.     At or around that time, Plaintiff complained to Lt. Petry that it was unfair that Jamie Jackson was not placed on a performance improvement in June 2018, despite his lack of knowledge regarding proper CAFS pump operations.

59.    Further, in October 2018, Jamie Jackson did not securely attach the gate valve to the hydrant, resulting in the gate valve shooting off the hydrant when it was opened.

60.    Though no one was injured, Lt. Petry stated his concern that Jackson, who had graduated from Driver Apparatus Pump Operation School, continued to make mistakes but was not placed on a PIP.

61.    At or around that time, Plaintiff again complained to Lt. Petry that it was unfair that Jamie Jackson was not disciplined for his performance.

62.    In or around November 2018, Plaintiff successfully completed the PIP.

63.    In or around March 2019, Plaintiff asked Defendant about using the Employee Assistance Program ("EAP") and the number of counseling sessions they provided.

64.    In or around late March 2019, Plaintiff was verbally counseled due to a curb rash on his tire.

65.    Again, other similarly situated white employees were not disciplined for similar, or worse, driving mistakes.

66.    Again, other similarly situated non-disabled employees were not disciplined for similar, or worse, driving mistakes.

67.    Again, other similarly situated younger employees were not disciplined for similar, or worse, driving mistakes.

68.    Again, other similarly situated employees that had not requested reasonable accommodations were not disciplined for similar, or worse, driving mistakes.

69.    In or around April 2019, Plaintiff was counseled about "inappropriate comments made about Mexicans," despite the fact that Plaintiff is Hispanic and his white co-workers were

the individuals instigating comments about Mexicans, such as, cooking "Mexican tacos" or playing "Mexican dominoes."

70.     Plaintiff complained to Captain Houghton that the discipline was unfair because the comments were directed toward him.

71.     In or around May 2019, Plaintiff was unable to locate the siren activation switch in the fire apparatus and received a counseling.

72.     Plaintiff was given a verbal counseling for failing to meet the expectations of Defendant.

73.     During the performance counseling, Defendant used Plaintiff's "personal issues" related to his disabilities as reasons for his poor performance.

74.     Plaintiff was given an Employee Expectation Plan and told that he had to pass every test on the new plan or he would be terminated.

75.     Around this time, due to his depression, anxiety, and treatment he was experiencing at work, Plaintiff contemplated suicide.

76.     Due to friends and family intervening, Plaintiff did not attempt suicide.

77.     Plaintiff informed Lt. Petry that he had planned on committing suicide, but decided not to.

78.     Lt. Petry reported that Plaintiff was suffering from psychological impairments and had contemplated suicide to BC Wernicke and Deputy Chief Cusick.

79.     Defendant sent Plaintiff to a psychiatric care center for evaluation.

80.     Defendant placed Plaintiff on FMLA leave.

81.     Plaintiff had to see his EAP counselor.

82.     Plaintiff visited his Primary Care Provider and was prescribed Lexapro, an antidepressant.

83.     Plaintiff was ordered to be on Lexapro for a minimum of three (3) weeks, at which time he could be reevaluated in order to return to work.

84.     In or around June 2019, Plaintiff returned from FMLA leave.

85.     Plaintiff was told that his PIP was on hold while he was on FMLA leave and would be reinstated upon his return.

86.     In or about June 2019, while driving with Captain Bishoff and Plaintiff, a Fire Medic, Powell, was unable to locate the siren activation switch in the fire apparatus.

87.     Powell did not receive any discipline.

88.     Powell is a white male under 40 years old.

89.     Plaintiff asked Captain Bishoff and Chief Long why Powell was not disciplined for the same behavior he was disciplined for.

90.     Captain Bishoff and Chief Long told Plaintiff that they were not going to discuss Powell and that Plaintiff was throwing Powell under the bus.

91.     Plaintiff told his supervisors that he was not throwing anyone under the bus, but that he wanted to know why he was not being treated the same as Powell.

92.     Following his return from FMLA leave, between June and September 2019, Plaintiff was subjected to 17 tests and was required to get a passing grade of 80% or more on each test.

93.     Because he was subjected to so many tests, Plaintiff's co-workers began asking if he had a learning disability.

94.    Defendant's continuous testing of Plaintiff caused his co-workers to question Plaintiff's abilities – regardless of the actual outcomes of the tests.

95.    In or around August 2019, Plaintiff received a negative performance evaluation.

96.    Plaintiff expressed his belief that he was being targeted.

97.    Following his evaluation, Plaintiff requested and attended a meeting with Chief Cusick and the Director of Human Resources to discuss his evaluation because Plaintiff believed that his evaluation was not accurate.

98.    Later in August 2019, Plaintiff worked with Lt. Tobin and told her about the excessive testing, discipline, and discriminatory treatment by Defendant.

99.    During their shift, Plaintiff asked Lt. Tobin about his performance in finding addresses and she said "[y]ou sure know your streets, Brian".

100.    After his shift that day, Lt. Rathe contacted Plaintiff to inform him that Battalion Chief Long told him Plaintiff would not be allowed to travel to other stations, work overtime, or perform any trade time with anyone.

101.    In September 2019, Plaintiff was given another pump test.

102.    Notably, the pump malfunctioned, requiring adjustments.

103.    Plaintiff subsequently failed the test.

104.    Later, Megan Penrod, a white female under 40, performed the exact same procedure, the pump malfunctioned and required the same adjustments that Plaintiff performed, but was given a passing score.

105.    In September 2019 it was decided that Plaintiff would be tested again and would need to pass Objective 4 with an 80% before moving on to Objective 5.

106.    Then, on September 17, 2019, Captain Bishoff called Plaintiff off-duty on his cell phone and told him they had made the decision to test him on the engine again.

107.    On September 19, 2019 Plaintiff took the written streets test and scored 100%, scored 100% on his drivers' test, finding 10 addresses with FF/EMT Saysoff, and scored 91% on the pump test.

108.    Despite the fact that he passed the required test, scoring over 90%, as well as 15 out of 17 tests over the previous three months, Chief Long and Deputy Chief Cusick placed Plaintiff on administrative leave.

109.    Plaintiff's Union Representative and the Union President were both on his shift.

110.    Chief Cusick told Plaintiff that he was not to communicate with anyone on his shift except for Chief Cusick and Chief Long, effectively forbidding Plaintiff to speak to his Union Representative(s).

111.    In or around late September 2019, Plaintiff was given a performance evaluation of overall failure and lack of confidence in ability to perform his job.

112.    On or about September 23, 2019, Defendant recommended Plaintiff's termination due to poor performance.

113.    On or about September 24, 2019, Chief Cusick and Chief Dehner offered Plaintiff the opportunity to resign.

114.    Plaintiff refused to resign.

115.    Upon information and belief, had Plaintiff resigned then he would have waived rights he was entitled, such as filing a union grievance or unemployment benefits.

116.    Chief Cusick and Chief Dehner told Plaintiff that there was a recommendation for his termination.

117.   Plaintiff was given 48 hours to file a grievance.

118.   Plaintiff filed a grievance regarding the recommendation for termination.

119.   On or about September 27, 2019, Plaintiff again met with Chief Cusick and Chief Dehner to review his grievance regarding the recommendation for termination.

120.   Ultimately, Plaintiff's employment was terminated on September 27, 2019.

121.   Plaintiff was, and is, a qualified individuals who was ready, willing and able to work.

122.   As a result of his disability, record of a disability or perceived disability, Defendant terminated Plaintiff.

123.   Defendant regarded Plaintiff as being and/or perceived Plaintiff to be disabled and/or Plaintiff has a record of being disabled.

124.   Plaintiff's physical and/or mental impairment substantially limited his ability to perform certain tasks.

125.   Defendant knew or should have known of Plaintiff's physical and/or mental impairments.

126.   Defendant's conduct has caused Plaintiff degradation, humiliation, anxiety and emotional distress.

127.   Defendant's conduct has caused Plaintiff lost wages and benefits; particularly, loss of health, dental and life insurance benefits when Plaintiff was terminated.

128.   Defendant's conduct has caused Plaintiff to lose benefits in the form of 401K compensation, wherein, Defendant made contributions to Plaintiff's 401K.

129.   Defendant's conduct has caused Plaintiff to lose other retirement benefits in the form of a pension plan.

130.     Defendant's conduct has caused Plaintiff to incur medical bills due to a lack of insurance following his termination.

131.     At all times relevant herein, before and after, the individuals responsible for the acts alleged herein were agents, servants, and employees of Defendant and was at all times acting within the scope and course of their agency and employment, or their actions were expressly authorized or ratified by Defendant. Therefore, Defendant is vicariously liable for the individuals' actions.

<u>**COUNT I**</u>
**Americans with Disabilities Act – Disability Discrimination/Failure to Accommodate**

132.     Plaintiff incorporates by reference all other paragraphs in this Complaint and restates and re-alleges the same.

133.     The Americans with Disabilities Act prohibits discrimination against a person who has a mental or physical impairment that substantially limits one or more major life activities, or who is regarded as having such an impairment, or who has a record of such an impairment, which with or without reasonable accommodation does not interfere with the individual's ability to perform the essential functions of the job in question.

134.     Defendant discriminated against Plaintiff because he is actually disabled, has a record of disability and/or because Defendant regarded him as disabled.

135.     Plaintiff was disabled for purposes of the ADA.

136.     Plaintiff's disability substantially affects and/or has affected one or more of his major life activities.

137.     Plaintiff had a physical and/or psychological impairment that during flare ups substantially limited his major life activities, including but not limited to, his ability to concentrate, his ability to interact with others, his ability to sleep, his ability to work.

138.   Plaintiff requested reasonable accommodations, including but not limited to, medical leave, not to be a driver and to be tested fairly.

139.   Defendant knew Plaintiff was actually disabled, has a record of disability and/or perceived and regarded Plaintiff as having a mental or physical impairment that substantially affects one or more of his major life activities.

140.   Defendant discriminated against Plaintiff on the basis of his disability, his record of disability and/or perceived disability in ways including but not limited to: treating Plaintiff with hostility and less favorably than similarly situated, non-disabled employees, unwarranted disciplinary actions and ultimately terminating Plaintiff's employment with Defendant.

141.   The conduct and actions by the above-described perpetrators were performed on the basis of Plaintiff's disability, record of disability and/or perceived disability, and constituted disability discrimination that is prohibited by the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.*

142.   Plaintiff suffered tangible adverse employment actions as a result of Defendant's hostile treatment of Plaintiff, all based on Plaintiff's disability, record of disability or perceived disability.

143.   Defendant's conduct has caused Plaintiff emotional distress, including but not limited to sadness, degradation, humiliation, anger, and upset.

144.   The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

145.   Defendant's treatment of Plaintiff was punitive in nature and was based upon Plaintiff's status as a person regarded as having a physical and/or mental impairment that substantially limits one or more major life activities.

146.    Supervisory and administrative level employees knew or should have known of the discrimination based on Plaintiff's disability, record of disability or perceived disability, but they failed to appropriately address the problem and further failed to implement effective and appropriate procedures to stop the discrimination.

147.    The actions and conduct set forth herein were outrageous and showed an evil motive, reckless indifference, or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter others from similar conduct.

148.    At all times mentioned herein, the above referenced perpetrators were employees, supervisors, managers, agents, servant, and employees of Defendant and were at all such time acting within the course and scope of their employment, and/or their actions were expressly authorized by Defendant, thus making Defendant liable for punitive damages under the doctrine of respondeat superior.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count I of this Complaint, for a finding that he was subjected to unlawful discrimination prohibited by 42 U.S.C. § 12101, *et seq*., for an award of compensatory and punitive damages, pre-judgment and post-judgment interest as provided by law, for his costs herein expended, for general and special damages, for his reasonable attorneys' fees, and such other relief as this Court deems just and proper, including equitable relief.

## COUNT II
### Americans with Disabilities Act – Retaliation

149.    Plaintiff hereby incorporates by reference every other allegation of this Complaint as if fully set forth herein.

150.    Plaintiff's complaints and reports of disability discrimination to his immediate supervisors, constituted protected activities.

151.    Plaintiff's requests for reasonable accommodations from Defendant constituted protected activities, including but not limited to, requesting medical leave.

152.    As a result of Plaintiff's protected activities, Defendant subjected Plaintiff to adverse employment actions as alleged herein, including but not limited to subjecting Plaintiff to greater scrutiny, baseless claims of poor performance, and ultimately termination of his employment.

153.    Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

154.    At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

155.    Defendant's unlawful conduct directly and proximately caused and will continue to cause Plaintiff to suffer damages, including but not limited to lost wages and emotional distress.

156.    Defendant's actions were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others. Therefore, Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

WHEREFORE Plaintiff prays for judgment in his favor and against Defendant on Count II of his Complaint for a finding that he has been subjected to unlawful discrimination and retaliation as prohibited by the Americans with Disabilities Act; for an award of compensatory and punitive damages; pre judgment and post judgment interest as provided by law; for general and

special damages; for his costs expended herein; reasonable attorneys' fees; and for such other and further relief as this Court deems just and proper.

## COUNT III
### Title VII – Racial Discrimination and Harassment

157.   Plaintiff incorporates by reference the allegations in the preceding paragraph as if fully set forth herein.

158.   During the course and scope of Plaintiff's employment, Defendant's representatives acting within the course and scope of their employment, engaged in a pattern and practice of intentional discrimination and harassment of Plaintiff based on his race, in violation of 703(a) of Title VII, 42 U.S.C. §2000e 2(a) and §2000e 3(a).

159.   The harassment and discrimination had the purpose and effect of unreasonably interfering with Plaintiff's work performance thereby creating an intimidating, hostile and offensive working environment.

160.   The actions and conduct of Defendant's representatives acting within the course and scope of employment created an intimidating, hostile and offensive working environment and thereby detrimentally affected Plaintiff.

161.   The conduct as described herein would have offended a reasonable person of the same race in Plaintiff's position.

162.   Management level employees knew or should have known of the racial discrimination and harassment described herein but failed to take appropriate action to address the discrimination and further failed to implement effective and appropriate procedures to stop and remedy the racial discrimination and harassment.

163.   By failing to conduct a prompt investigation of Plaintiff's allegations of race discrimination, Defendant exacerbated the discriminatory and hostile work environment to which Plaintiff was subjected.

164.   Defendant through agents and employees engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights.

165.   The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant, to punish Defendant and to deter Defendant and others from like conduct.

166.   As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages, including lost wages and emotional distress.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of his Complaint, for a finding that he has been subjected to unlawful discrimination and harassment provided by 42 U.S.C. §2000e *et seq*; for an award of compensatory and punitive damages; equitable relief; for his costs expended; for his reasonable attorneys' fees and expert fees as provided by 42 U.S.C.§ 2000e 5(k); and for such other relief as this Court deems just and proper.

## COUNT IV
### Title VII – Retaliation

167.   Plaintiff incorporates by reference the preceding and succeeding paragraphs of this Complaint as though fully set forth herein.

168.   Plaintiff's complaints of racial discrimination and harassment constituted a protected activity.

169.   By reason of Plaintiff's complaints Defendant retaliated against Plaintiff resulting in Plaintiff being harassed, unfairly disciplined and discharged.

170.     At all times mentioned herein, before and after, the above-mentioned individuals were agents, servants, and employees of Defendant and were at all times acting within the course and scope of their employment.

171.     Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

172.     At the time Defendant retaliated against Plaintiff, Defendant knew that such retaliation was unlawful.

173.     The actions and conduct set forth herein was outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

174.     As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages and lost wages.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count IV of his Complaint, for a finding that he has been subjected to unlawful retaliation provided by 42 U.S.C. §2000e *et seq*, for an award of compensatory and punitive damages; equitable relief; for his costs expended; for his reasonable attorneys' fees and expert's fee provided by 42 U.S.C. §2000e 5k and for such other relief as this Court deems just and proper.

### COUNT V
### Violation of 42 U.S.C. §1981

175.     Plaintiff incorporates by reference the allegations in the preceding and succeeding paragraphs as if fully set forth herein.

176.     During the course and scope of Plaintiff's employment, Defendant's representatives, agents and employees, acting within the course and scope of their employment,

engaged in a pattern of practice of intentional discrimination against Plaintiff based on his race in the making and enforcing of a contract.

177.    Defendant through representatives, agents and employees engaged in these discriminatory practices with malice or reckless indifference to Plaintiff's federally protected rights.

178.    The actions and conduct set forth herein were outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and others, and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter it and others from like conduct.

179.    As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages including lost wages and emotional distress.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count V of his Complaint, for a finding that he has been subjected to unlawful discrimination as prohibited by 42 U.S.C. §1981; for an award of compensatory and punitive damages; equitable relief; for his costs expended; for his reasonable attorneys' fees and expert's fees; and for such other relief as this Court deems just and proper.

## COUNT VI
### 42 U.S.C. §1981 - Retaliation

180.    Plaintiff incorporates by reference the preceding and succeeding paragraphs of this Complaint as though fully set forth herein.

181.    Plaintiff's complaints of racial discrimination and harassment constituted a protected activity.

182.    By reason of Plaintiff's complaints Defendant retaliated against Plaintiff resulting in Plaintiff being harassed, unfairly disciplined and discharged.

183.     At all times mentioned herein, before and after, the above-mentioned individuals were agents, servants, and employees of Defendant and were at all times acting within the course and scope of their employment.

184.     Defendant's retaliation against Plaintiff was intentional, willful, and malicious, and constituted a willful violation of Plaintiff's federally protected rights.

185.     At the time Defendant retaliated against Plaintiff, Defendants knew that such retaliation was unlawful.

186.     The actions and conduct set forth herein was outrageous and showed evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

187.     As a direct and proximate cause of the actions and conduct set forth herein, Plaintiff has suffered and will continue to suffer damages and lost wages.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count VI of his Complaint, for a finding that he has been subjected to unlawful retaliation provided by 42 U.S.C. § 1981, *et seq*, for an award of compensatory and punitive damages; equitable relief; for his costs expended; for his reasonable attorneys' fees and expert's fee provided by 42 U.S.C. § 1981 and for such other relief as this Court deems just and proper.

## <u>COUNT VII</u>
### Age Discrimination in Employment Act (29 U.S.C. § 621, *et seq.*)

188.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

189.     Plaintiff was 48 at the time of his termination.

190.    During the course and scope of Plaintiff's employment, Defendant engaged in a pattern and practice of discrimination of Plaintiff based on his age, in violation of the ADEA.

191.    By reason of Plaintiff's age, Defendant discriminated against Plaintiff in ways including but not limited to unfairly discipling and criticizing Plaintiff, and ultimately terminating his employment, all in violation of the ADEA.

192.    By reason of his age, Defendant treated Plaintiff less favorably than younger employees.

193.    The actions of Defendant, as noted above, have been discriminatory and constituted a disparity in treatment toward Plaintiff as to job terms, conditions, and privileges of employment, and constitute unlawful employment practices in violation of the ADEA.

194.    As a direct and proximate cause of Defendant's discrimination, Plaintiff has incurred and will continue to incur damages, including lost wages and emotional distress.

195.    The actions set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in hie favor and against Defendant on Count VII of his Complaint, for a finding that he has been subjected to unlawful discrimination; for an award of back pay, including lost fringe benefits, bonuses, cost of living increase and other benefits including interest, equitable relief in the form of front pay or reinstatement, for an award of compensatory and liquidated damages, for costs expended, reasonable attorneys' fees, and such other and further relief as this Court deems just, proper, and equitable.

## COUNT VIII
## VIOLATION OF FMLA (29 U.S.C. § 2601 *et seq.*)

196.    Plaintiff incorporates by reference all preceding and succeeding paragraphs and allegations as though fully set forth herein.

197.    Plaintiff was employed by Defendant, who is a covered employer.

198.    Defendant is an employer as defined by 29 U.S.C. § 2601 *et seq.* and 29 U.S.C. § 2611(4)(A)(iii), as it is a public agency and employs 50 or more employees.

199.    Plaintiff suffered from a medical condition that required continuing treatment by health care providers; particularly, Plaintiff was diagnosed with depression and anxiety, among other things.

200.    Defendant was aware of Plaintiff's medical condition and need for medical treatment.

201.    Plaintiff worked for the Defendant for at least 12 months.

202.    Plaintiff worked for Defendant at a location where 50 or more employees of Defendant worked within 75 miles.

203.    Plaintiff was employed by Defendant and worked more than 1250 hours in the 12 months prior to his request for FMLA leave that resulted in his termination.

204.    Plaintiff was allowed and did take leave pursuant to 29 U.S.C. § 2601, et seq., and 29 U.S.C. § 2612(a) and 29 C.F.R. § 825.112 and § 825.122.

205.    Under the FMLA, Plaintiff was entitled to take leave.

206.    Further, under the FMLA, Plaintiff was entitled to take leave intermittent FMLA leave for his depression and anxiety.

207.    In the 12 months preceding his termination, Plaintiff did not exceed 12 work weeks of FMLA leave.

208.    An eligible employee who takes FMLA leave is protected from retaliation or other harassing or discriminatory treatment.

209.    The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of any right provided by the FMLA.

210.    Plaintiff's employment was terminated as a consequence of his attempt to exercise of his rights under the FMLA.

211.    Defendant lacks good faith in its treatment of Plaintiff for exercising his rights under the FMLA.

212.    Defendant deprived, interfered with, restrained, and/or denied Plaintiff of his rights under the FMLA, and/or Defendant retaliated against Plaintiff, by harassing, intimidating, and retaliating against Plaintiff, and terminating his employment, in response to his use of and/or request for FMLA leave.

213.    Plaintiff's termination under the circumstances set out herein was prohibited by the FMLA.

214.    Defendant's actions against and treatment of Plaintiff were those which a reasonable employee would have found materially adverse.

215.    The FMLA makes it unlawful an employee's use of FMLA leave to result in the loss of any employment benefit which accrued prior to the start of the employee's FMLA leave.

216.    A causal connection exists between Plaintiff's protected FMLA activity and the adverse employment actions taken by Defendant.

217.    The reasons given by Defendant for the misconduct toward Plaintiff and his constructive termination were pretext to cover up their unlawful and retaliatory motives.

WHEREFORE, Plaintiff prays the Court grant the following relief:

A.  Award Plaintiff damages in an amount equal to any wages, salary, employment

benefits, and other compensation and/or benefits denied or lost to Plaintiff by reason of the violation of the FMLA, and interest on the same amounts;

B. Award Plaintiff liquidated damages equal to the sum of the amount of any wages, salary, employment benefits, and other compensation denied or lost to Plaintiff and the interest on that amount;

C. Award Plaintiff reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action; and

D. Award such other and further relief as to the court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all counts of the Complaint.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates the United States District Court for the District of Kansas, located in Kansas City, Kansas as the place of trial.

Respectfully submitted,

/s/ Aaron C. McKee
Aaron C. McKee                                    KS# 20889
MCKEE LAW, L.L.C.
222 South Cherry Street
Olathe, Kansas 66061
Phone: (913) 768-6400
Facsimile: (913) 768-6420
aaronmckee@ksmoemploymentlaw.com

**ATTORNEY FOR PLAINTIFF**